IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MARY MICHELE ZIMMERMAN,

    Plaintiff,

      v.                                  Civil Action No. 3:25cv31

HON. JAMES J. O'CONNELL, *et al.*,

    Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on a Motion to Dismiss (the "Motion") by Defendants Hon. James J. O'Connell, Chelsea Lythgoe Murrell, the Commonwealth of Virginia, and the General District of Colonial Heights, Virginia (collectively, "Defendants").[1] (ECF No. 18.) Plaintiff Mary Michele Zimmerman responded in opposition to the Motion, (ECF No. 25), and Defendants replied, (ECF No. 26).

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process.

For the reasons articulated below, the Court will grant the Motion. (ECF No. 18.) The Court will also grant Ms. Zimmerman leave to amend to file an amended complaint.

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system.

## I.  Factual and Procedural Background

### A.    Factual Background[2]

"At all relevant times prior to January 16, 2024, [Ms.] Zimmerman worked as a full-time deputy clerk for the Colonial Heights General District Court" (the "GDC").  (ECF No. 1 ¶ 8.)  As a deputy clerk, she was employed both by the Commonwealth of Virginia and the GDC.  (ECF No. 1 ¶ 9.)

In November 2023, Ms. Zimmerman reported to her supervisor, Chelsea Murrell ("Clerk Murrell"), that she was being "unlawfully bullied" by her co-workers at the GDC.  (ECF No. 1 ¶ 10.)  Ms. Zimmerman alleges that Clerk Murrell "did not take [her] bullying allegations seriously" and believed that Ms. Zimmerman was "making up" the claims against her co-workers in an effort "to distract from her own allegedly deficient work performance."  (ECF No. 1 ¶ 11.)

"On or about December 20, 2023," while using a computer at the GDC, Ms. Zimmerman "discovered" a series of instant messages that her coworkers exchanged about her.  (ECF No. 1 ¶ 12.)  When she logged onto the computer, "the internal 'Teams' chat notice popped up automatically" and "opened the window to the internal messages."  (ECF No. 1 ¶ 20.)  She alleges that the messages would have been available to "anyone who accessed the computer." (ECF No. 1 ¶ 20.)

In the messages, Ms. Zimmerman's coworkers "grossly disparage[ed] her, ma[de] fun of her, and sen[t] 'memes' about her."  (ECF No. 1 ¶ 13.)  The messages also included "accusations"

---

[2] In considering the Motion to Dismiss, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Ms. Zimmerman. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

2

that Ms. Zimmerman had a gambling problem; received food stamps; misrepresented the amount of money she received per month in child support; and falsely implied that Ms. Zimmerman was an alcoholic. (ECF No. 1 ¶ 12.) Clerk Murrell, Ms. Zimmerman's supervisor and the person to whom Ms. Zimmerman had reported that she was being bullied, participated in the instant message conversation. (ECF No. 1 ¶ 13.)

Ms. Zimmerman "began to print pages of the conversation so that she could send them to Human Resources for violating Commonwealth policies and to confirm her prior allegations of bullying." (ECF No. 1 ¶ 14.) As Ms. Zimmerman picked up the printed messages from the office printer, Clerk Murrell "confronted her" and "falsely accused [Ms. Zimmerman] of inappropriately viewing her private messages." (ECF No. 1 ¶ 15.) Clerk Murrell "demanded" that Ms. Zimmerman give her the printed messages, and when Ms. Zimmerman refused, Clerk Murrell "forcibly ripped several of the pages from [Ms. Zimmerman]'s hands." (ECF No. 1 ¶ 15.)

Ms. Zimmerman was "mortified at what was happening and pointedly told [Clerk] Murrell that she was violating law and policy." (ECF No. 1 ¶ 15.) Clerk Murrell "continued to confront [Ms. Zimmerman]" and "demanded that the two of them" continue the conversation inside Clerk Murrell's office. (ECF No. 1 ¶ 16.) Ms. Zimmerman "flatly refused" to speak with Clerk Murrell inside her office "unless a third party was allowed to be present in the room with them." (ECF No. 1 ¶ 16.) Clerk Murrell refused to have a third-party present during the meeting and Ms. Zimmerman left the GDC "frustrated, traumatized, and frazzled by the confrontation." (ECF No. 1 ¶ 16.) Clerk Murrell subsequently placed Ms. Zimmerman on administrative leave in, according to Ms. Zimmerman, "a clear effort to deflect from her own . . . gossiping and bullying" and "forbade her from returning" to the GDC's premises. (ECF No. 1 ¶ 17.)

3

Three weeks later, Ms. Zimmerman received a letter (the "Termination Letter") from Judge James J. O'Connell ("Judge O'Connell") terminating her employment with the GDC. (ECF No. 1 ¶ 18.)[3] Ms. Zimmerman alleges that in the letter, Judge O'Connell "falsely accused [her of], among other things:  (i) unprofessional conduct involving the incident on December 20,

---

[3] Defendants attach a copy of the Termination Letter to their Motion to Dismiss. (ECF No. 19-1.)  Attached to the Termination Letter are several pages describing a grievance procedure to contest termination of employment. (ECF No. 19-1, at 3–14.)  Courts "generally do not consider materials other than the complaint and documents incorporated into it when evaluating that complaint under Rule 12(b)(6), though courts may consider a document attached by the defendant to its motion to dismiss where the document was integral to and explicitly relied on in the complaint and where the plaintiff[] do[es] not challenge its authenticity." *Braun v. Maynard*, 652 F.3d 557, 559 n.1 (4th Cir. 2011) (quotation omitted).

Here, the Termination Letter and its contents are relied on in the Complaint, (*see* ECF No. 1 ¶¶ 18–22), and Ms. Zimmerman does not challenge their authenticity, (ECF No. 25, at 3–5 & n.1).  However, Ms. Zimmerman objects to the "import[ation] [of] other extra-record facts" through the pages attached to the Termination Letter detailing the post-termination grievance procedure to which Ms. Zimmerman was entitled. (ECF No. 25, at 4 n.1; ECF No. 19-1, at 3–14.)

Ms. Zimmerman provides no authority to suggest that a Court may credit only a *portion* of a document attached to a motion to dismiss—particularly where the plaintiff consents to the Court's consideration of a separate portion of the document—and the Court is wary of its ability to do so.  Indeed, binding precedent from the United States Court of Appeals for the Fourth Circuit suggests that such an approach might be inappropriate.  As the Fourth Circuit has explained, allowing courts to consider documents that a defendant attaches to a motion to dismiss is "partly motivated by concerns that a plaintiff could prevail on a motion to dismiss by selectively quoting documents in the complaint without providing their full context." *See CACI Intern, Inc., v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 156 (4th Cir. 2009).  "[C]ourts can prevent such manipulation by considering the documents *in their entirety* when presented by the defendant." *Id.* (emphasis added).

Because this Court's consideration of a motion to dismiss is ordinarily confined to the facts as alleged in the complaint, and Ms. Zimmerman provides no basis for this Court to consider only *part* of the Termination Letter and its accompanying pages, the Court declines to consider the Termination Letter and its attachments.

Defendants also attach to their Motion to Dismiss a Performance Improvement Plan ("PIP") memorandum issued from Clerk Murrell to Ms. Zimmerman in November 2023. (ECF No. 19-4.)  The PIP is not *referenced* in the Complaint, let alone "explicitly relied on." *Braun*, 652 F.3d at 559 n.1.  The Court will not consider the PIP in ruling on the Motion.

2023, (ii) insubordination related to that incident, and (iii) acting aggressively, yelling, and being disruptive regarding the incident." (ECF No. 1 ¶ 18.)  The letter also "falsely created the impression" that Ms. Zimmerman "committed misconduct by looking at the messages in the first place" and "acted improperly by refusing to give [Clerk] Murrell the messages." (ECF No. 1 ¶ 20.)  Judge O'Connell's letter also "created a false picture of [Ms. Zimmerman's] actions on December 20, 2023 by omitting (i) the fact that the messages at issue were making fun of and defaming [her]; and (ii) the fact that [Clerk] Murrell all but assaulted Plaintiff by ripping several of the printed messages from [Ms. Zimmerman's] grasp." (ECF No. 1 ¶ 21.)

In addition to Ms. Zimmerman, Judge O'Connell sent the email to Presiding Judge Matthew Nelson ("Judge Nelson") and the Human Resources Director for the Office of the Executive Secretary ("HR Director"). (ECF No. 1 ¶ 18.)

Ms. Zimmerman alleges that none of the "accusations" in Judge O'Connell's emails "are or were true." (ECF No. 1 ¶ 19.)  "[E]ven though [Ms. Zimmerman] was upset on December 20, 2023, she did not yell, she was not disruptive, she was not insubordinate, she did not act aggressively, and she was not unprofessional." (ECF No. 1 ¶ 19.)  "[A]lthough she was very firm in her statements to [Clerk] Murrell, [Ms. Zimmerman] made clear that she had reasonable objections to meeting with [Clerk Murrell] without someone else present and she made clear that she believed that the conduct documented in the messages was unlawful." (ECF No. 1 ¶ 19.)  She also alleges that she did not improperly access the messages, and her retention of the messages was "proper and protected activity" because she intended to use them to "complain about the misconduct therein." (ECF No. 1 ¶ 20.)

Ms. Zimmerman was "not given any opportunity to see the contents" of the Termination Letter before she received it.  (ECF No. 1 ¶ 22.)  She also alleges that the Termination Letter was

placed in her "state-based judicial personnel file," and is "readily available to anyone who views the file," including "prospective state-based judicial employers . . . in and around the Commonwealth of Virginia." (ECF No. 1 ¶¶ 37–38.)

**B.   <u>Procedural Background</u>**

On January 16, 2025, Ms. Zimmerman filed a three-count Complaint against Clerk Murrell, the Commonwealth of Virginia, the GDC, and Judge O'Connell. (ECF No. 1.) On June 13, 2025, Defendants filed the instant Motion to Dismiss and an accompanying memorandum pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF Nos. 18, 19.) On July 14, 2025, Ms. Zimmerman responded in opposition, (ECF No. 25), and on July 17, 2025, Defendants replied, (ECF No. 26).

Ms. Zimmerman brings three Counts:

**Count I:**   **Retaliation Under the Virginia Whistleblower Protection Act, Va. Code § 2.2-3011**
(Clerk Murrell, Commonwealth of Virginia, the GDC)

**Count II:**   **Retaliatory Action, Va. Code § 40.1-27.3**
(Clerk Murrell, Commonwealth of Virginia, the GDC)

**Count III:**   **Fourteenth Amendment Due Process Violation:  Liberty Interest**
(Judge O'Connell in his Individual Capacity)

(ECF No. 1 ¶¶ 23–41.)

## II.  Standard of Review

### A.    Rule 12(b)(1) Motion to Dismiss

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper.  *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) can attack subject matter jurisdiction in two ways.  First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting that the complaint fails to state a claim upon which subject matter jurisdiction can lie.  *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.  In such a challenge, a court assumes the truth of the facts alleged by plaintiff, thereby functionally affording the plaintiff the same procedural protection he or she would receive under Rule 12(b)(6) consideration.  *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

A Rule 12(b)(1) motion may also challenge the existence of subject matter jurisdiction in fact, apart from the pleadings.  *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.  In such a case, because a party challenges the court's "'very power to hear the case,'" the trial court is free to weigh evidence to determine the existence of jurisdiction.  *Int'l Longshoremen's Ass'n* 914 F. Supp. at 1338 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial

7

court from evaluating for itself the merits of jurisdictional claims. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219.

If the facts necessary to determine jurisdiction intertwine with the facts central to the merits of the dispute, a court should find that jurisdiction exists and resolve any factual dispute on the merits because the jurisdictional attack would then closely mirror a challenge of the merits. *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *Adams*, 697 F.2d at 1219. A court need not examine jurisdiction in that manner when a plaintiff asserts the claim solely for the purpose of obtaining jurisdiction, or when a plaintiff raises a wholly insubstantial and frivolous claim. *Bell v. Hood*, 327 U.S. 678, 682–83 (1946).

**B.    Rule 12(b)(6) Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Giacomelli*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012).

### III. Analysis

Clerk Murrell, the Commonwealth, and the GDC move to dismiss Ms. Zimmerman's claims in Counts I and II for lack of subject matter jurisdiction under Rule 12(b)(1) on the ground that these claims are barred by sovereign immunity, and, in the alternative, under Rule 12(b)(6) because Ms. Zimmerman failed to state a claim upon which relief can be granted. (ECF No. 19, at 6–15.) Judge O'Connell seeks dismissal of Ms. Zimmerman's claim in Count III because he is entitled to qualified immunity, and Ms. Zimmerman failed to state a claim against him under the Due Process Clause of the Fourteenth Amendment.[4] (ECF No. 19, at 16–26.) For the reasons articulated below, the Court will grant Defendants' Motion and dismiss all

---

[4] The Due Process Clause to the Fourteenth Amendment provides:

No State shall . . . deprive any person of life, liberty, or property, without due process of law[.]

U.S. Const. amend XIV, § 1.

Ms. Zimmerman also sues under the Due Process Clause to the Fifth Amendment. (ECF No. 1 ¶ 1.) Because Ms. Zimmerman names as defendants *state* employees, the Fourteenth Amendment governs her due process claims rather than the Fifth Amendment.

of Ms. Zimmerman's claims without prejudice. The Court will also grant Ms. Zimmerman leave to file an amended complaint.

A.    **Counts I and II:** **The Court Will Dismiss the Claims in Counts I and II Against Clerk Murrell, the Commonwealth, and the GDC Without Prejudice**

In Counts I and II, Ms. Zimmerman brings Virginia state law claims against Clerk Murrell, the Commonwealth, and the GDC. In Count I, Ms. Zimmerman asserts wrongful termination in violation of Virginia's Whistle Blower Protection Act, Va. Code § 2.2-3011.[5] (ECF No. 1 ¶¶ 23–27.) In Count II, Ms. Zimmerman brings a claim for wrongful termination based on retaliation in violation of Virginia Code § 40.1-27.3.[6] (ECF No. 1 ¶¶ 28–32.)

Clerk Murrell, the Commonwealth, and the GDC move to dismiss the claims in both counts, with prejudice, under Rule 12(b)(1) for lack of subject matter jurisdiction because sovereign immunity bars the actions against them. (ECF No. 19, at 6–8 (Count I), 9–14 (Count II).) Clerk Murrell, the Commonwealth, and the GDC additionally argue that the Court lacks subject matter jurisdiction over Count I because claims brought under Virginia's Whistle Blower

---

[5] Virginia Code § 2.2-3011 provides, in relevant part, that "[n]o employer may discharge, threaten, or otherwise discriminate or retaliate against a whistle blower whether acting on his own or through a person acting on his behalf or under his direction." Va. Code § 2.2-3011(A). It further provides that, in addition to utilizing state or local grievance procedures set forth in Va. Code § 2.2-3012, "any whistle blower *may* bring a civil action for violation of this section in the circuit court of the jurisdiction where the whistle blower is employed," Va. Code § 2.2-3011(D).

[6] Virginia Code § 40.1-27.3 provides, in relevant part, that "[a]n employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee . . . in good faith reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official[.]" Va. Code § 40.1-27.3(A)(1).

Protection Act must be brought in the state circuit court where the wrongful termination occurred.[7] (ECF No. 19, at 6.)

In response, Ms. Zimmerman consents to dismissal of Counts I and II. (ECF No. 25, at 21.) She explains that, "[i]n reviewing the legal authorities provided by Defendants in their motion to dismiss Memo[randum], [she] is constrained to conclude that subject matter jurisdiction is likely lacking as to the claims and/or that they are barred by sovereign and or Eleventh Amendment immunity, even if the factual allegations might otherwise state cognizable claims." (ECF No. 25, at 21.) Unlike Clerk Murrell, the Commonwealth, and the GDC, Ms. Zimmerman requests dismissal *without* prejudice. (ECF No. 25, at 21.)

"A dismissal for . . . [a] defect in subject matter jurisdiction [] must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." *S. Walk at Broadlands Homeowner's Ass'n, Inc v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) (collecting cases). "Neither the [United States] Supreme Court nor [the United States Court of Appeals for the Fourth Circuit] has conclusively determined whether an Eleventh Amendment immunity defense goes to a court's

---

[7] Defendants argue, without citation to a single case, that the Court lacks subject matter jurisdiction over Count I because claims under this provision "*must* be brought 'in the circuit court of the jurisdiction where the whistle blower is employed.'" (ECF No. 19, at 6 (quoting Va. Code § 2.2-3011(D) (emphasis added).)

Defendants misrepresent the statute. The statute provides that "any whistle blower *may*"—not *must*—"bring a civil action for violation of this section in the circuit court of the jurisdiction where the whistle blower is employed." Va. Code § 2.2-3011(D). Federal courts in Virginia have exercised jurisdiction over claims brought under this provision. *See Moschetti v. Off. of Inspector Gen.*, 758 F. Supp. 3d 533, 547–48 (E.D. Va. 2024) (dismissing plaintiff's claim under § 2.2-3011 on defendant's motion for summary judgment because plaintiff did not establish that the exclusive reason for her firing was in retaliation to her whistleblowing); *Redwine v. Rector & Visitors of Univ. of Va*, No. 3:25-cv-00017, 2025 WL 3296298, at *4–5 (W.D. Va. Nov. 26, 2025) (dismissing plaintiff's claims brought under § 2.2-3011 on a 12(b)(6) motion for failure to state a claim).

11

subject matter jurisdiction or a plaintiff's ability to state a claim on which relief can be granted." *Albert v. Lierman*, 152 F.4th 554, 563 n.9 (4th Cir. 2025).  But the Fourth Circuit recently explained that because "sovereign immunity is a threshold, nonmerits issue that does not entail any assumption by the court of substantive law-declaring power, a dismissal on that basis, like dismissals for lack of jurisdiction, should normally be without prejudice." *Id.* (citation omitted)

Accordingly, the Court will dismiss Ms. Zimmerman's claims in Counts I and II against Clerk Murrell, the Commonwealth, and the GDC *without* prejudice.

**B.      Count III:  The Court Will Dismiss Ms. Zimmerman's Due Process Liberty Interest Claim**

In Count III, Ms. Zimmerman alleges that Judge O'Connell violated her liberty interests under the Fourteenth Amendment by making false allegations in her termination letter that have caused her reputational harm.  (ECF No. 1 ¶¶ 33–41.)  Judge O'Connell moves to dismiss Ms. Zimmerman's claims on the grounds that (1) she failed to state a claim that her liberty interests were violated, and (2) he is entitled to qualified immunity.[8]

**1.      Legal Standard:  Qualified Immunity**

Qualified immunity shields government officials from civil liability when they perform discretionary functions insofar as their conduct does not violate clearly established rights of

---

[8] Ms. Zimmerman sues Judge O'Connell in his individual capacity.  (ECF No. 1 ¶ 3.) Judge O'Connell argues that because the "Complaint references *official* acts by Judge O'Connell," Ms. Zimmerman must be "asserting claims against Judge O'Connell in his official capacity . . . as Chief Judge of the [Colonial Heights] General District Court." (ECF No. 19, at 17.)

The distinction between an "official capacity" and an "individual capacity" claim is not determined by the *type* of action alleged but rather the *person or entity* the plaintiff intends to sue.  As the United States Supreme Court has explained, "personal-capacity suits seek to impose personal liability upon a government official for actions he [or she] takes under color of state law.  Official-capacity suits, in contrast, 'generally represent only another way of pleading an

which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The qualified immunity defense ensures that

"[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright

lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

> To overcome qualified immunity a plaintiff must meet a two-step inquiry:
>
> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted). "Courts have

discretion to take these steps in either order." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538

(4th Cir. 2017) (citing *Pearson*, 555 U.S. at 236); *cf. King v. Riley*, 76 F.4th 259, 264–65 (4th

Cir. 2023) (explaining that because qualified immunity does not protect officials who "*knowingly*

disregard the law," the Fourth Circuit has "carved out" the class of Eighth Amendment deliberate

indifference claims where officers "who are aware that their conduct is constitutionally deficient

---

action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (internal citation omitted).

Here, Ms. Zimmerman seeks to recover from Judge O'Connell for his actions taken in his role as a judge in the Colonial Heights General District Court, and the mere fact that he took the alleged actions while working does not make the act "official." The Court proceeds with its analysis of Ms. Zimmerman's due process claim against Judge O'Connell in his individual capacity.

The Court also notes that Judge O'Connell does not argue that he is entitled to absolute judicial immunity. Indeed, it appears that he would likely not be "entitled to absolute immunity because the hiring and firing of court personnel is a non-judicial act for absolute immunity purposes," and therefore not governed by judicial immunity. *Nunez v. Davis*, 169 F.3d 1222, 1229 n.3 (9th Cir. 1999) (citing *Forrester v. White*, 484 U.S. 219, 229 (1988)).

cannot rely on the clearly established prong," so courts do not look to see if he or she violated clearly established precedent) (emphasis in original).

For Ms. Zimmerman's Fourteenth Amendment due process claim to survive a qualified-immunity-based Rule 12(b)(6) motion to dismiss, she must have plausibly alleged in her complaint that Judge O'Connell violated her constitutional rights. *Tobey v. Jones*, 706 F.3d 379, 386–87 (4th Cir. 2013). A complaint need only give the defendants fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555. "A Rule 12(b)(6) motion to dismiss does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey*, 706 F.3d at 387 (internal quotation marks and citations omitted).

With this in mind, the Court turns to the elements of a Fourteenth Amendment due process deprivation of liberty claim, which Ms. Zimmerman must sufficiently allege to survive the first prong of the qualified immunity analysis.

### 2.    Legal Standard: Due Process Deprivation of Liberty Claims

The Due Process Clause to the Fourteenth Amendment protects "(1) the liberty to engage in any of the common occupations of life, and (2) the right to due process where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him [or her]." *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007) (internal quotation marks and citations omitted).

"There are two components to a claim that a governmental employer violated a former employee's Fourteenth Amendment rights by publicly disclosing the reasons for the employee's discharge." *Cannon v. Village of Bald Head Island*, 891 F.3d 489, 501 (4th Cir. 2018). First, the plaintiff must allege that the charges against her: "(1) placed a stigma on [her] reputation; (2) were made public by the employer; (3) were made in conjunction with [her] termination or

14

demotion; and (4) were false." *Sciolino*, 480 F.3d at 646.  Second, the plaintiff "must demonstrate that [her] liberty was deprived without due process of law." *Cannon*, 891 F.3d at 501.

Thus, to find that a plaintiff sufficiently alleged her Due Process Claim, a court must consider (1) whether the plaintiff alleges that she was deprived of a protected liberty interest; and, (2) if so, whether she alleges she was deprived of that interest without due process of law. *Cannon*, 891 F.3d at 502.

### 3.    Ms. Zimmerman Has Plausibly Alleged a Protected Liberty Interest

Judge O'Connell argues that Ms. Zimmerman does not allege a protected liberty interest under either *Sciolino* prong one or prong two.  That is, Ms. Zimmerman fails to allege (1) that the statements in the Termination Letter placed a stigma on her reputation, and (2) that the statements were made public.  (ECF No. 19, at 17–19, 21–23.)   In the interest of creating a full record, the Court addresses each prong below.

#### a.    *Sciolino* Prong 1:  Ms. Zimmerman Plausibly Alleges That Judge O'Connell's Statements in the Termination Letter Placed a Stigma on Her Reputation

Ms. Zimmerman alleges that the Termination Letter states that she was terminated for engaging in "unprofessional conduct," including "insubordination," "acting aggressively, yelling, and being disruptive." (ECF No. 1 ¶¶ 18, 20.)  Ms. Zimmerman also alleges that the Termination Letter "falsely created the impression" that she "committed misconduct by looking at the messages in the first place" and "acted improperly by refusing to give [Clerk] Murrell the messages." (ECF No. 1 ¶ 20.)

A governmental disclosure places a stigma on an employee's reputation if it "implies the existence of serious character defects such as dishonesty or immorality.'" *Roncales v. Cnty. of*

*Henrico*, 451 F. Supp. 3d 480, 504–05 (E.D. Va. 2020) (quoting *Cannon*, 891 F.3d at 502).  For example, the Fourth Circuit has found that "charges of . . . Department regulation violations that 'smack[ed] of deliberate fraud' and 'in effect allege[d] dishonesty'" placed a stigma on an employee's reputation.  *Sciolino*, 480 F.3d at 646 n.2 (quoting *McNeill v. Butz*, 480 F.2d 314, 319–20 (4th Cir. 1973)).  Similarly, a city's charge that a police officer falsely advanced the odometer on his police-issued police cruiser thereby "deliberately destroying city property in violation of a [d]epartment regulation" also placed a stigma on an employee's reputation. *Sciolino*, 480 F.3d at 646 n.2 (quotation omitted); *see also Boston v. Webb*, 783 F.2d 1163, 1165–66 (4th Cir. 1986) (recognizing that plaintiff's liberty interest "was surely implicated" by public announcement that he was discharged after failing to disprove allegation of receiving bribe); *Cox v. N. Va. Transp. Comm'n,* 551 F.2d 555, 557–58 (4th Cir. 1976) (affirming trial court's determination that plaintiff's liberty interest was infringed when employer publicly linked her discharge to investigation of financial irregularities, thus "insinuating dishonesty").

But the Fourth Circuit has also made clear that "'[a]llegations of incompetence' alone [do] not give rise to a protected liberty interest." *Sciolino*, 480 F.3d at 646 n.2 (quoting *Robertson v. Rogers*, 679 F.2d 1090, 1092 (4th Cir. 1982)); *Zepp v. Rehrmann*, 79 F.3d 381, 388 (4th Cir. 1996) (employer's announcement that a plaintiff was being forced to retire "due to management problems" demonstrated, at most, "incompetence or unsatisfactory job performance" that did not amount to a liberty interest).

District courts within the Fourth Circuit have likewise found that statements discussing a plaintiff's job competency or performance, including allegations of "insubordination or a serious breach of discipline" do not implicate a liberty interest because they "do not imply that [the plaintiff] has a serious character defect like dishonesty or immorality." *See, e.g., Stickley v.*

16

*Sutherly*, No. 5:09-cv-4, 2009 WL 1806657, at *6 (W.D. Va. June 24, 2009); *Harmon v. Cumberland Cnty Bd. of Edu.*, 186 F. Supp. 3d 500, 508 (E.D.N.C. 2016), *aff'd*, 669 F. App'x 174 (4th Cir. 2016) ("Allegations of unsatisfactory job performance or insubordination are not sufficiently stigmatizing to establish a deprivation of a liberty interest.").

Whether the statements in Judge O'Connell's Termination Letter give rise to a protected liberty interest presents a close call. Indeed, many of the statements in the Termination Letter discuss Ms. Zimmerman's competence, including her "unprofessional conduct" and "insubordination," which, standing alone, would not create a liberty interest. (ECF No. 1 ¶¶ 18, 20.)

However, Ms. Zimmerman also alleges that the Termination Letter "falsely created the impression" that Ms. Zimmerman "committed misconduct by looking at the messages in the first place" and "acted improperly by refusing to give [Clerk] Murrell the messages." (ECF No. 1 ¶ 20.) Favorably read, these allegations plausibly suggest that Ms. Zimmerman violated her coworkers' privacy, thereby implying some manner of dishonesty or character defect. At this early stage, the Court finds these allegations sufficient to establish a protected liberty interest.

      **b.**     **_Sciolino_ Prong 2: Ms. Zimmerman Plausibly Alleges that Judge O'Connell's Statements in the Termination Letter Were Made Public**

The second *Sciolino* prong requires the Court to determine whether Ms. Zimmerman has alleged that Judge O'Connell made the stigmatizing information public. Here, Ms. Zimmerman alleges that the stigmatizing information in the Termination Letter was made public in two ways. First, the information was publicized when Judge O'Connell emailed the Termination Letter to the HR Director and to Presiding Judge Nelson. (ECF No. 1 ¶¶ 18, 36.) Second, she alleges that the information was further publicized because the Termination Letter was placed in her "state-

based judicial personnel file" and is "readily available to anyone who views the file," including "prospective state-based judicial employers . . . in and around the Commonwealth of Virginia." (ECF No. 1 ¶¶ 37–38.)

"[A] *purely private* communication of the reasons for an employee's termination cannot be the basis for a due process claim, because there is no possibility of the allegation affecting the individual's Fourteenth Amendment liberty interests." *Sciolino*, 480 F.3d at 647 (emphasis in original) (citing *Bishop v. Wood*, 426 U.S. 341, 348–49 (1976)).

But a plaintiff can meet the publication requirement by alleging publication of the stigmatizing information through its inclusion in her personnel file. *Id.* at 650. To do so, she "must allege (and ultimately prove) a likelihood that prospective employers (i.e., employers to whom [she] will apply) or the public at large will inspect the file." *Id.* A plaintiff can make this showing in two ways:

> First, the employee could allege (and ultimately prove) that his [or her] former employer has a practice of releasing personnel files to all inquiring employers. Second, the employee could allege that although his [or her] former employer releases personnel files only to certain inquiring employers, that he [or she] intends to apply to at least one of these employers. In either case, he [or she] must allege that the prospective employer is likely to request the file from his [or her] former employer.

*Id.*

A plaintiff may also satisfy the publication requirement by showing that the stigmatizing statements were made public through other means. For example, in *Cannon v. Village of Bald Head Island, North Carolina*, the Fourth Circuit found that a police department made public stigmatizing statements about the plaintiffs where the department shared the termination letters containing the stigmatizing information with the media and sent emails containing the same

18

information "to all full-time . . . employees and part-time Department personnel." 891 F.3d 489, 503 (2018).

Considering these principles, the Court turns to Ms. Zimmerman's claims. Here, Ms. Zimmerman's first allegation with respect to publication—that Judge O'Connell shared the Termination Letter with Judge Nelson and Dr. Mills—falls short of establishing publication because Judge Nelson and the HR Director were her *current* employers, not her *prospective* employers. The circumstance at bar is more akin to sharing the information via a private communication, *see Sciolino*, 480 F.3d at 647, because there is little (or no) possibility that the allegations in the Termination Letter would be shared beyond Judge Nelson and the HR Director. This Court declines to find that a communication containing the reasons for Ms. Zimmerman's termination that was sent to the HR Director and an employee with administrative or supervisory responsibilities (here, Judge Nelson) constitutes publication. To hold otherwise would inappropriately deem many internal publications among employers to be "publication."

Ms. Zimmerman's argument regarding publication of the Termination Letter in her personnel file fares better. Ms. Zimmerman alleges that the Termination Letter is included in her "state-based judicial personnel file," and is "readily available to anyone who views the file," including "prospective state-based judicial employers . . . in and around the Commonwealth of Virginia." (ECF No. 1 ¶¶ 37–38.) As the Fourth Circuit explained in *Sciolino*:

> A plaintiff need not allege that [the] file has actually been disseminated to particular prospective employers. But, [a plaintiff] must allege more than that [the] file 'may be available' to them. We thus hold that an employee must allege (and ultimately prove) a likelihood that prospective employers (i.e., employers to whom [they] will apply) or the public at large will inspect the file.

*Sciolino*, 480 F.3d at 650. Thus, it is "the *availability* of personnel files to prospective employers [that] may give rise to a constitutionally cognizable public disclosure," not whether the file has

19

actually been shared. *Roncales*, 451 F. Supp. 3d at 504–05 (emphasis added) (citing *Sciolino*, 480 F.3d at 646 and *Ledford v. Delancey*, 612 F.2d 883, 887 (4th Cir. 1980)); *see Sciolino*, 480 F.3d at 650 (explaining that a "requirement that a plaintiff must allege actual disclosure to a particular prospective employer would undermine the liberties protected by the Fourteenth Amendment").

Ms. Zimmerman's allegations that the Termination Letter is included in her state personnel file and is "readily available to anyone who views the file" constitutes publication under binding Fourth Circuit precedent and sufficiently satisfy the second *Sciolino* prong.[9]

        c.      **_Sciolino_ Prong 3: It is Undisputed that Judge O'Connell's Allegedly Stigmatizing Statements Were Made in Conjunction With Ms. Zimmerman's Termination from Employment**

The third *Sciolino* prong requires the Court to determine whether Judge O'Connell made the stigmatizing statements in conjunction with her termination from employment. *Sciolino*, 480 F.3d at 646. Judge O'Connell does not appear to dispute this prong, and the Court agrees that it

---

[9] Ms. Zimmerman does *not* allege that she seeks, or intends to seek, employment with the "state-based judicial employers" "in and around the Commonwealth" who have access to her personnel file. This is of no moment. Neither party cites authority suggesting that such an allegation is *required* to establish publication, but similar allegations are present in many cases where courts found that the inclusion of stigmatizing information in a personnel file constituted publication. *See Roncales*, 451 F. Supp. 3d at 504–05 (finding plaintiff-firefighter alleged that "any public safety department . . . will have access to her personnel file *and that she had intended on pursuing a career as a fire-fighter*") (emphasis added and internal quotations omitted); *Bunch v. Powell*, No. 1:15-cv-47, 2015 U.S. Dist. LEXIS 168717, at *11 (W.D. Va. Dec. 17, 2015) (finding publication of the challenged statements where the plaintiff alleged that the "false statements were made public when her state judicial personnel file, which contained the statements, *was publicly shared among state judicial entities to which the plaintiff applied for employment*") (emphasis added); *Beatty v. Thomas*, No. 2:05-cv-71 (RAJ), 2005 WL 1667745, at *10 (E.D. Va. June 13, 2005) ("Plaintiff claims that his liberty interest is implicated because subsequent to the termination Respondents disclosed the reasons for his employment and fabricated information that limits his future opportunities for employment. Plaintiff states that the Navy retains his termination information in a file, and that he has been disqualified from some employment and unable to secure other employment because of the false information disclosed by Defendants.").

is satisfied.  As alleged, Judge O'Connell made the stigmatizing statements in Ms. Zimmerman's

Termination Letter, and therefore clearly in conjunction with her termination.   (ECF No. 1 ¶ 18.)

This satisfies the third *Sciolino* prong.

      **d.**     ***Sciolino* Prong 4:  Ms. Zimmerman Plausibly Alleges that Judge O'Connell Made False Statements  in the Termination Letter**

Finally, the fourth *Sciolino* prong requires the Court to determine whether Judge

O'Connell's statements were false.  *Sciolino*, 480 F.3d at 646.  "'At the Motion to Dismiss stage,

the Court must accept as false any statements which the Complaint alleges to be false.'"

*Roncales*, 451 F. Supp. 3d at 504–05 (quoting *McCray v. Infused Sols., LLC*, No. 4:14-cv-158

(RGD), 2017 WL 4111958, at *3 (E.D. Va. Sept. 15, 2017)).  Ms. Zimmerman repeatedly alleges

that the stigmatizing statements about her behavior are false, (ECF No. 1 ¶¶ 19–20, 22), and has

thus satisfied this prong.

Under the *Sciolino* factors, Ms. Zimmerman has established that Judge O'Connell made

false and stigmatizing charges regarding the grounds for the termination of her employment and

therefore plausibly alleges a protected liberty interest.

      **4.**     **Ms. Zimmerman Has Not Alleged that Her Liberty Interest Was Deprived Without Due Process**

The Court must determine whether Ms. Zimmerman's allegations could demonstrate that

her liberty was deprived without due process of law, the second component of her Due Process

Claim.  *Cannon*, 891 F.3d at 501.  To that end, the Supreme Court has recognized that, when a

governmental employer places an employee's reputation "at stake" by publicly disclosing

defamatory charges, "notice and opportunity to be heard are essential." *Id.* (citing *Bd. of Regents*

*of State Colleges v. Roth*, 408 U.S. 564, 573 (1972)).  The Fourth Circuit has explained that the

opportunity to be heard "must be granted at a meaningful time" and that the "opportunity to clear

your name after it has been ruined by dissemination of false, stigmatizing charges is not meaningful." *Id.* (internal quotations marks and citations omitted).

On this issue, Ms. Zimmerman alleges only that she "was not given any opportunity to see the contents of the [Termination Letter] before it was sent to her, Judge Nelson, and the HR Director." (ECF No. 1 ¶ 22.) Favorably construed, the Court understands this claim to allege that Ms. Zimmerman was denied process before the Termination Letter was disseminated.

As the Court explained above, Judge O'Connell's sharing of the letter with Judge Nelson and the HR Director does not constitute publication. Accordingly, Ms. Zimmerman was not entitled to process before Judge O'Connell sent the letter to Dr. Mills and Judge Nelson. Thus, that Ms. Zimmerman did not have an opportunity to review the letter before it was sent does not amount to a due process violation.

However, as also explained above, Ms. Zimmerman *does* plausibly allege publication of the Termination Letter through its placement in her personnel file, and Ms. Zimmerman was therefore entitled to due process before that publication.

Ms. Zimmerman pleads no allegations with respect to the process, or lack thereof, she was afforded before the Termination Letter was publicized through her personnel file. Judge O'Connell attempts to fill this gap through his Motion to Dismiss, explaining that Ms. Zimmerman "received adequate due process because she had the opportunity to pursue the Judicial System's post-termination grievance process," that the details of the grievance process were attached to the Termination Letter, and that Ms. Zimmerman did not initiate or pursue a grievance through this process.[10] (ECF No. 19, at 20–21.)

---

[10] Judge O'Connell characterizes his argument on this point as Ms. Zimmerman "waiv[ing] her liberty interest claim." (ECF No. 19, at 19 (capitalization omitted).) The issue before the Court is not whether Ms. Zimmerman *utilized* the process she entitled to, but whether

22

Ms. Zimmerman vigorously disputes Judge O'Connell's reliance on the grievance process, explaining that "entertain[ing]" arguments from Judge O'Connell about the grievance process is "inappropriate" because, "while the Termination Letter talks about the grievance process, [Ms.] Zimmerman has not pleaded any facts in the Complaint about (i) the process itself; (ii) the efficacy or utility of the process[;] or (iii) why she did not engage in the process at any step of the way." (ECF No. 25, at 13.)  Ms. Zimmerman also states that "if for any reason this Court has concerns about this particular issue, [Ms.] Zimmerman requests leave to file an amended complaint so that she can explain how and why the post-deprivation grievance process would have been useless and futile and would not have otherwise provided her with relief in a meaningful time or a meaningful manner." (ECF No. 25, at 14 n.8.)

Despite Judge O'Connell's urging, the Court cannot find that the grievance process identified in the Termination Letter and discussed at length in the Motion to Dismiss, but about which Ms. Zimmerman alleged no facts in the Complaint, satisfied her constitutional right to due process. *Linlor v. Polson*, 263 F. Supp. 3d 613, 618 (E.D. Va. 2017) (citation omitted) (explaining that in evaluating a motion to dismiss, a court may not "look beyond the four corners of the complaint").  But the Court also finds that because Ms. Zimmerman failed to plead *any* allegations that her due process rights were violated through the inclusion of the Termination Letter in her personnel file, she has failed to state a claim that her liberty was deprived without due process of law.

Ms. Zimmerman has failed to state a claim against Judge O'Connell in his individual capacity under the Due Process Clause, meaning that she has failed to establish the first element

---

she *received* adequate process.  While declining to participate in the grievance process could, depending on the constitutional adequacy of the proceeding, foreclose a due process claim, doing so would not necessarily amount to waiver of the liberty interest altogether.

23

of the qualified immunity analysis. [11]   The Court will grant the Motion to Dismiss.  In addition, the Court will grant Ms. Zimmerman's request for leave to file an amended complaint.  *See* Fed. R. Civ. P. 15(a). [12]

### IV.  Conclusion

For the reasons articulated above, the Court will grant the Motion, (ECF No. 18), and dismiss Ms. Zimmerman's claims against all Defendants without prejudice.  The Court will grant Ms. Zimmerman's request for leave to file an amended complaint.

An appropriate Order shall issue.

Date: 3/23/26
Richmond, Virginia

_____ /s/
M. Hannah Lauck
Chief United States District Judge

---

[11] Because the Court will dismiss the Complaint for failure to state a due process violation—and thereby allege a constitutional violation—the Court need not reach the second step of the qualified immunity analysis and does not evaluate whether Ms. Zimmerman's due process claim was clearly established.

[12] Federal Rule of Civil Procedure 15(a) provides:

(1) *Amending as a Matter of Course.*  A party may amend its pleading once as a matter of course no later than:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

(2) *Other Amendments.*  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a)(1)–(2).